## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

JEROME JACKSON, SR., ET AL.         :    CIVIL ACTION NO. 2:21-CV-03263

VERSUS                              :    JUDGE JAMES D. CAIN, JR.

APACHE CORP (OF DELAWARE), ET AL.:    MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand filed by Jerome Jackson, Sr., and Rachel E. Jackson ("plaintiffs"). Doc. 16.  The motion is opposed by defendants BP America Production Company ("BP America"), Apache Corporation, and Wagner Oil Company (collectively, "Removing Defendants"). Doc. 21.  The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated **IT IS RECOMMENDED** that the motion be **DENIED.**

### I.
#### BACKGROUND

This case arises from alleged contamination of plaintiffs' property due to oil and gas operations. Doc. 1, att. 1, p. 4.  These oil and gas operations were conducted under a mineral lease from Pan American Petroleum Corporation[1] to Arnaudville Company, Inc., which was signed on March 13, 1962 ("1962 Mineral Lease"). *Id.*, pp. 30–34.  A single oil well was drilled under this mineral lease: MO 1 RA SUC; MW Petroleum Fee #10 (serial no. 217100). *Id.*, pp. 7 & 29.

---

[1] Pan American Petroleum Corporation changed its name to Amoco Production Company ("Amoco"), effective February 1, 1971. Doc. 21, att. 1, p. 8, ¶ 22.

### A. *Factual Backdrop of this Case*

Plaintiffs are surface owners of the property at the center of this suit, which they acquired through a private act of sale from The Banquier Company, Inc.[2] dated May 11, 1999. Doc. 1, att. 6. Amoco Production Company ("Amoco") and defendants Apache Corporation and Wagner Oil Company operated and/or used the oil and gas facilities that allegedly caused the contamination of plaintiffs' property. Doc. 1, att. 1, p. 6. Defendant BP America is a "successor in interest by merger, acquisition, or name change" to Amoco, formerly Pan American Petroleum Corporation. *Id.*, p. 5. Defendant Apache Corporation owns the mineral rights to plaintiffs' property and leases the surface of the property,[3] and it is a former assignee of interests in the 1962 Mineral Lease. Doc. 21, att. 1, pp. 10–11. Defendant Wagner Oil Company is former assignee of mineral and surface interests in the property. *Id.*, p. 11.[4] Defendant H.L. Hawkins & H.L. Hawkins, Jr., Inc. ("Hawkins") is a former assignee of interests in the 1962 Mineral Lease.[5] Doc. 1, att. 1, pp. 37–38. Defendant International Well Testers, Inc. ("IWT") is a contractor hired by Amoco to sample and close pits. *Id.*, pp. 7–8; Doc. 16, att. 1, p. 14.

### B. *Procedural Posture*

Plaintiffs filed suit in the 31st Judicial District Court, Parish of Jefferson Davis, State of Louisiana on May 5, 2021. Doc. 1, att. 1, p. 4. In the petition, plaintiffs allege that their property in the vicinity of the Welsh Oil Field within Jefferson Davis Parish ("plaintiffs' property") was

---

[2] The Banquier Company, Inc. bought the surface rights to the land from Amoco Production Company through a limited warranty deed. Doc. 21, att. 28.

[3] Apache Corporation gained these interests in the property by merging with MW Petroleum, which acquired the interests from Amoco in 1991. Doc. 21, att. 1, pp. 9–11. The ownership of the mineral rights includes those leased in the 1962 Mineral Lease, making Apache the lessor of this lease. *Id.*, p. 9, ¶ 25.

[4] Apache assigned its mineral and surface interests to Wagner Oil Company on June 28, 2001. *Id.*, p. 11. Wagner Oil Company assigned its interests to Criolla, LP on January 1, 2011. *Id.*, p. 12.

[5] Hawkins was made assignee through an Assignment of Oil, Gas, and Mineral Lease(s) dated May 26, 1964, and made effective June 1, 1964. *Id.*, p. 5, ¶ 14. Hawkins was assigned additional interests in the 1962 Mineral Lease on May 28 and July 6, also in 1964. *Id.*, p. 6. Hawkins conveyed all its interests in the 1962 Mineral Lease to West American Oil Company through Act of Sale dated January 26, 1965. *Id.*, p. 7.

contaminated by oil and gas exploration and production activities. *Id.*, p. 6. They claim defendants'

activities either caused the alleged contamination or made defendants otherwise legally responsible

for the it. *Id.* Additionally, Plaintiffs assert that defendants or their representatives engaged in acts

including "fraud, ill practices, and misrepresentation . . . designed to hinder, impede or prevent

plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security."

*Id.*, p. 10, ¶ 14. However, they later narrow this claim to actions by Amoco and Apache

Corporation, including hiring IWT in 1987. Doc. 22, pp. 5–6.

Accordingly, plaintiffs bring numerous claims for damages they have allegedly suffered

because of this contamination. First, they allege that defendants are liable for negligence, a

continuing tort and a continuing trespass, breach of express contract, breach of implied lease

obligations under the Louisiana Civil and Mineral Codes, violations of article 667, and violations

of articles 2317 and 2322. Doc. 1, att. 1, pp. 6–23. Next, plaintiffs claim defendants' liability for

punitive damages under former Civil Code article 2315.3 and civil fruits of trespass under article

486. *Id.*, p. 16, ¶ 29 & p. 17, ¶ 32. Finally, they claim entitlement to damages for unjust enrichment

if there is no other adequate remedy at law. *Id.*, p. 18, ¶ 35. Plaintiffs claim defendants who are

assignees or sublessees of the mineral leases are solidarily liable to plaintiffs. *Id.*, p. 15, ¶ 24.

Defendants timely removed the case on September 10, 2021, to this court based on

diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. In their Notice of Removal, Removing Defendants

assert that diversity jurisdiction exists because the amount in controversy exceeds \$75,000[6] and

because the properly joined parties are of diverse citizenship. *Id.*, pp. 4–5. Removing Defendants

assert that the properly joined parties—plaintiffs, Apache Corporation, BP America, and Wagner

---

[6] The parties agree that the amount in controversy exceeds \$75,000. Doc. 1, pp. 7–8; Doc. 16, att. 1, pp. 10.

Oil Company—are of diverse citizenship. *Id.*, pp. 4–6.[7]  Defendants also assert that the Louisiana

citizenship of IWT and Hawkins (collectively, "non-diverse defendants") should not be considered

because they were both improperly joined. *Id.*, pp. 6–7.  Specifically, Removing Defendants allege

that there is no possibility of recovery against the non-diverse defendants because plaintiffs failed

to state a claim against IWT, and plaintiffs' claims against both non-diverse defendants are barred

under the subsequent purchaser doctrine. *Id.*, pp. 6–7.

Plaintiffs filed a timely motion to remand. Doc. 16.  They contend that this court lacks

jurisdiction because the Removing Defendants cannot meet their burden of showing that the parties

are completely diverse. *Id.*, pp. 10–11.  Specifically, plaintiffs assert that Removing Defendants

have not even come close to presenting undisputed facts to support their claim of improper joinder.

*Id.*, att. 1, pp. 13–14.  Plaintiffs also claim they have sufficiently alleged their status as third-party

beneficiaries entitled to assert their own breach-of-contract claim for damages caused by

defendants. *Id.*, pp. 14–17.  Finally, plaintiffs contend that all the defendants are solidarily liable

for the entirety of the obligation to restore plaintiffs' property. *Id.*, pp. 18–20.

In their opposition to the motion to remand, the Removing Defendants argue that plaintiffs'

claims against the non-diverse defendants fail as a matter of law. Doc. 21, pp. 7.  Specifically,

Removing Defendants assert that the negligence claims against IWT and Hawkins are not viable

because IWT owed plaintiffs no legally recognized duty and Hawkins never operated the well at

the center of this suit. *Id.*, pp. 7–8.  Removing Defendants also claim plaintiffs do not have a viable

contract claim against the non-diverse defendants. *Id.*, pp. 8–10.

---

[7] The parties do not dispute the citizenship of any party.  The citizenships are as follows: Plaintiffs are Louisiana citizens. Doc. 1, p. 5.  Apache Corporation and BP America are citizens of Delaware and Texas (with their places of incorporation in Delaware and principal places of business in Texas). *Id.*, p. 6.  Wagner Oil Company is a citizen of Texas (with its principal place of business and place of incorporation both in Texas). *Id.*  IWT and Hawkins are both citizens of Louisiana. *Id.*, pp. 6–7.

In reply [doc. 22], plaintiffs allege for the first time the existence of another well (serial no. 95666 or "Pan Am Unit 1 – Well #1") associated with unlined earthen pits on plaintiffs' property and claim that Hawkins became the operator of record of that well around 1965. Doc. 22, pp. 2–3. The plaintiffs then go on to remind this court that the applicable analysis must focus on joinder, not the merits of plaintiffs' case. *Id.*, pp. 3–5.  Plaintiffs also contend that Removing Defendants' assertion of an affirmative defense to show improper joinder is "not even marginally appropriate" because it requires a factual merits inquiry. *Id.*, p. 5.

Removing Defendants filed a sur-reply in opposition to plaintiffs' motion to remand to address the "new facts and new legal allegations" raised in plaintiff's reply. Doc. 25.  They first claim plaintiffs are incorrect to assert that this court cannot consider affirmative defenses as part of the improper joinder analysis. *Id.*, pp. 1–2.  They also claim that Pan Am Unit 1 – Well #1 was never mentioned before plaintiffs' reply in document 22, is not on plaintiffs' property, never had any associated facilities on plaintiffs' property, and was plugged and abandoned in 1975. *Id.* Finally, Removing Defendants argue that plaintiffs have failed to establish a viable cause of action because they do not allege that IWT was ever an operator or interest holder in any lease covering their property, and they only allege Hawkins was an operator of record of the newly asserted Pan Am Unit 1 – Well #1, which is not on plaintiffs' property.[8] *Id.*, p. 4.

## II.
### LAW AND ANALYSIS

### A.  *Removal Jurisdiction and Improper Joinder Standards*

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and by statute.'" *Gunn v. Minton,* 133 S.Ct. 1059, 1064 (2013) (citing *Kokkonen*

---

[8] Removing Defendants also claim that plaintiffs' own exhibits show that Hawkins operated this newly asserted well for a single day over 55 years ago. Doc. 25, p. 4 (citing Rec. Doc. 22, att. 1, pp. 41–42).

*v. Guardian Life Ins. Co. of America,* 114 S.Ct. 1673, 1675 (1994)).  Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court. 29 U.S.C. § 1441(a).  However, a federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).  The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

District courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).  The diversity provisions of § 1332 require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 117 S.Ct. 467, 472 (1996).

When determining subject matter jurisdiction, a court may disregard a non-diverse party's citizenship if the party was improperly joined. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).  If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).  The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Id.* at 574.  Here, defendants did not allege actual fraud, so only the latter method is relevant. Thus, the pertinent question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573.  The possibility of liability must be "reasonable, not merely

theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The removal statute is to be strictly construed, and any doubt about the propriety must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

To determine whether defendants have demonstrated that plaintiffs have "no possibility of recovery" against the non-diverse defendants, the court conducts a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. When conducting a Rule 12(b)(6)-type analysis, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Id.* (citing *Twombly*, 127 S.Ct. 1955).

In the improper joinder context however, the scope of the inquiry may sometimes be broader than that of a 12(b)(6)-type analysis. *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). While a traditional 12(b)(6) analysis looks only to the complaint, in the improper joinder inquiry where a plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder," the court may "pierce the pleadings" and also consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim. *Smallwood*, 385 F.3d at 573; *Campbell*, 509 F.3d at 669. In doing so, the court must consider all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the

plaintiff. *Travis*, 326 F.3d at 649.  Any contested issues of fact or ambiguities of state law must be resolved in favor of the plaintiff. *Id.*

### B. Application

In their state court petition, plaintiffs allege that the five defendants are liable under multiple theories due to contamination caused by oil and gas exploration, production, and related activities. Doc. 1, att. 1, p. 4.  Plaintiffs contend generally that defendants' "activities," including construction, operation, and abandonment of oil and gas facilities, caused or made defendants legally responsible for the contamination. *Id.*, p. 6.  However, plaintiffs then specify that Amoco, Apache Corporation, and Wagner Oil Company were the ones who operated and used oil and gas facilities (later specifically identified as the well MO 1 RA SUC; MW Petroleum Fee # 10) and claimed that these activities likely led to contamination commingling. *Id.*, pp. 6–7.

Plaintiffs claim that defendants' failure to remove or remediate this alleged contamination led to permanent damage to the drinking water and other aquifers underlying the Field. *Id.*, p. 9. Plaintiffs also assert that defendants or their representatives intentionally engaged in acts including "fraud, ill practices, and misrepresentation . . . designed to hinder, impede or prevent plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security." *Id.*, p. 10, ¶ 14.  They later narrow this claim to Amoco and Apache. Doc. 22, pp. 5–6.  Plaintiffs allege all mineral lease assignee- and sublessee-defendants are solidarily liable to plaintiffs. Doc. 1, att. 1, p. 15, ¶ 24.  We find no specific allegations against Hawkins and against IWT, only the allegations that it negligently sampled and closed pits located on or near plaintiffs' property and negligently certified to regulatory agencies that those pits were closed according to applicable laws, statutes, rules, and regulations. *Id.*, pp. 7–8.

"[W]hether the plaintiff has stated a valid state law cause of action depends upon and is

tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs*

*v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (internal citations removed).  A plaintiff's

inability to make specific factual allegations against a non-diverse defendant is enough to establish

improper joinder. *Id.*  The state court petition in this matter provides little to no information about

the factual basis for Hawkins's or IWT's liability. Therefore, we choose to pierce the pleadings

and look to the parties' evidence to determine if Hawkins and IWT were improperly joined.

    *1.  Claims Against Hawkins*

In their state court petition, plaintiffs attached an assignment of interests that assigned

Barbara L. McCall's interest in the 1962 Mineral Lease[9] to Hawkins on July 1, 1964. Doc. 1, att.

1, pp. 37–38.  Additionally, Removing Defendants submitted an Act of Sale through which

Hawkins conveyed 100% of its interest in the 1962 Mineral Lease to West American Oil Company,

which was effective on January 1, 1965. Doc. 1, att. 4.  As discussed above, plaintiffs' claims

against the defendants are all related to alleged contamination from the operation of wells,

facilities, and equipment on plaintiffs' property.  However, plaintiffs never alleged that Hawkins

was an operator on their property but did specifically claim that Amoco, Apache Corporation, and

Wagner Oil Company were operators.  Furthermore, Removing Defendants produced an affidavit

by James Diehl, a professional landman with more than 40 years of experience, as evidence that

confirms Hawkins was not an operator of the only well on plaintiffs' property. Doc. 21, att. 1, pp.

13–14, ¶¶ 43–44.   Additionally, plaintiffs specifically state that the activities that led to

contamination or to responsibility for contamination occurred as a result of operations and use by

Amoco, Apache Corporation, and Wagner Oil Company. Doc. 1, att. 1, pp. 6–7.  Because there

---

[9] The 1962 Mineral Lease is an oil and gas lease between Pan American Petroleum Corporation (lessor) and Arnaudville Company Inc. (lessee), and it was signed on March 13, 1962. Doc. 1, att. 1, pp. 30–34.

are no factual allegations that Hawkins also contributed to this contamination through operations or use, plaintiffs have not established any actions by Hawkins that caused them damage. Thus, there is no reasonable basis for this court to predict that plaintiffs might be able to recover against Hawkins on the pleaded tort claims.

Plaintiffs also seek to recover against Hawkins by claiming to be beneficiaries of a stipulation pour autrui in the 1962 Mineral Lease.[10] Doc. 16, att. 1, p. 14. The relevant provision of this lease states that "Lessee shall be responsible for all damages caused by Lessee's operations." Doc. 1, att. 1, p. 33, ¶ 9. Contrarily, Removing Defendants argue that there is no third-party benefit as to Hawkins because it is undisputed that Hawkins did not conduct any operations on plaintiffs' property, which makes this provision of the Lease inapplicable to Hawkins. Doc. 21, p. 9. We agree with Removing Defendants.

Plaintiffs attempt to invalidate this counterargument by claiming that Hawkins operated Pan Am Unit 1 – Well #1, a well that was not mentioned before plaintiffs filed their reply. Doc. 22, p. 3. Plaintiffs do not even attempt to explain how this new well is relevant to the present suit, and they also admit that this well is not on their property. *Id.*, p. 2. There is no further argument or factual claim about Hawkins's supposed operation of this well or that it affected or contributed to the alleged pollution of plaintiffs' property. Thus, plaintiffs do not show any connection between the damages provision of the 1962 Mineral Lease and Hawkins's alleged operation of Pan Am Unit 1 – Well #1. Even if plaintiffs are third party beneficiaries to the 1962 Mineral Lease, a question we do not decide in this Report and Recommendation, they do not present any factual allegations that state a plausible claim for relief for breach of contract or lease against Hawkins. Furthermore, because no facts presented support an allegation that Hawkins contributed to or was

---

[10] Plaintiffs' claims against Hawkins are based on Hawkins's status as a former assignee of the rights in the 1962 Mineral Lease. Hawkins was not a party to the original lease. *See* Doc. 1, att. 1, pp. 30–34.

aware of the alleged pollution while it held an interest in the 1962 Mineral Lease, plaintiffs' claims against Hawkins for breach of contractual or lease obligations under the Louisiana Civil and Mineral Codes are not plausible.

Plaintiffs also claim that all defendants who are assignees or sublessees of the mineral lease at issue are solidarily liable to plaintiffs for the obligation to restore the property under Louisiana Revised Statutes articles 128 and 129. Doc. 1, att. 1, p. 15, ¶ 24. Plaintiffs assert that the obligation to restore property is contained in every mineral lease, either explicitly or impliedly. Doc. 16, att. 1, p. 18. Thus, they claim that the defendants obligated themselves to perform this obligation when they obtained an interest in the 1962 Mineral Lease. *Id.*

Plaintiffs allege that this solidary liability arose because defendants exceeded their use rights under the leases, which, plaintiffs claim, means defendants "excessively and unreasonably" exercised their mineral rights. Doc. 1, att. 1, p. 13. This allegation mirrors language used by the Louisiana Supreme Court to clarify when Mineral Code article 122 imposes an implied duty to restore the surface to its pre-lease condition. *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 893 So. 2d 789, 801 (La. 2005) ("Applying the jurisprudence and Civil Code articles discussed above, we hold that, in the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably or excessively."). Plaintiffs do not allege any facts to support their assertion that defendants exceeded their use rights. Thus, this claim of excessive and unreasonable use is a conclusory statement accompanying a recital of the requirements for a cause of action for restoration. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 127

S.Ct. 1955 (2007)).  Therefore, plaintiffs have not asserted a plausible claim for relief against Hawkins based on solidary liability.

  2.  *Claims Against IWT*

  Plaintiffs' tort claims against all five defendants are based on damage from operation of wells, other equipment, and facilities in Welsh Oil Field.  However, plaintiffs have presented no facts showing that IWT operated any of those wells, equipment, or facilities.  Moreover, the Conover Fee pit, which plaintiffs specifically claim IWT worked on, is not on plaintiffs' property. Doc. 22, p. 2.  Thus, plaintiffs have presented no evidence that IWT operated on their property, so the general tort claims in the petition are not plausible claims of relief against IWT.

  Plaintiffs assert additional tort claims specifically against IWT. Doc. 1, att. 1, pp. 7–8, ¶ 6. These claims include negligent sampling and closure of pits and negligent certification about the pit closures.  Since these are negligence claims, whether IWT owed a duty to plaintiffs is a threshold issue. *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994).  The only duties plaintiffs allege in the petition are "to protect plaintiffs and plaintiffs' Property" from the alleged contamination and pollution. Doc. 1, att. 1, p. 11, ¶ 15.  To support this assertion, plaintiffs make general references to company policy, industry practice, custom, the leases and contracts applicable to the Property, and state regulation. *Id.*  However, plaintiffs provide no facts to support these legal allegations.

  In addition to this lack of factual support for plaintiffs' claims, Removing Defendants offer a finding by the Eastern District of Louisiana that, in a case with similar allegations against IWT, IWT owed no "recognized legal duty" to the plaintiffs and was "not legally responsible for the closure of pits on plaintiff's property as a matter of Louisiana law." Doc. 21, p. 7 (quoting *Simoneaux v. Jolen Operating Co.*, No. C.A. 04-2467, 2004 WL 2632957, at *1 (E.D. La. Nov.

17, 2004)).  Plaintiffs did not rebut Removing Defendants' claim about the lack of duty owed by

IWT but instead claimed this court cannot look to the question of duty to decide this motion

because it is a merits issue. Doc. 22, p. 4.  Plaintiffs misunderstand something: we are not deciding

whether IWT owed them a duty; rather, we are determining whether plaintiffs presented sufficient

factual matter to state a claim of relief that is plausible on its face.  On the question of duty,

plaintiffs provided nothing more than legal allegations meant to look like facts.  Thus, plaintiffs

did not plead sufficient factual matter to state a plausible negligence claim against IWT.

Plaintiffs also seek to recover from IWT as beneficiaries of a stipulation pour autrui. Doc.

1, att. 1, p. 8, ¶ 6.  In the petition, plaintiffs state that the third-party beneficiary claims are based

on the contract for services between IWT and the operator (presumably Amoco). *Id.*  The contract

for services between Amoco and IWT is not part of the record[11] and no other details about it are

given.  Thus, there is not sufficient factual matter to determine that plaintiffs' claim to a third-party

benefit arising from this contract is plausible on its face.

However, in the pleadings, the parties analyzed the third-party beneficiary claims not under

the contract for services, but under the 1962 Mineral Lease. Doc. 16, att. 1, pp. 14–17; Doc. 21,

pp. 8–10.  Both parties acknowledge that IWT was a contractor and never an interest holder in any

lease on plaintiffs' property, including the 1962 Mineral Lease.  Thus, a stipulation pour autrui in

this lease would not give plaintiffs a right to recover against IWT.  Accordingly, there is not enough

factual matter available to state a contract-based claim of relief against IWT that is plausible on its

face.

Plaintiffs' claims of solidary liability among defendants are based on obligations rooted in

the mineral lease. Doc. 1, att. 1, p. 15, ¶ 24.  As already established, IWT was never a party to or

---

[11] The closest thing to this contract that is part of the record would be IWT's bid for the contract with Amoco. Doc. 1, att. 5, pp. 9–15.

interest holder in the mineral lease.  Thus, plaintiffs' subsequent claims that all defendants are liable in solido is not plausible as to IWT since this claim is based on obligations under a mineral lease that does not encompass IWT.

### III.
#### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Remand [Doc. 16] be **DENIED** and that non-diverse defendants **H.L. HAWKINS & H.L. HAWKINS, JR., INC.** and **INTERNATIONAL WELL TESTERS, INC.** be dismissed from this action without prejudice.

Under the provisions of 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429-30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 14th day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE